**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Michael Lindsay Faile, Appellant.

Appellate Case No. 2023-001055

Appeal From York County
William A. McKinnon, Circuit Court Judge

Unpublished Opinion No. 2026-UP-323
Heard April 6, 2026 – Filed July 1, 2026

**AFFIRMED**

Appellate Defenders Molly M. Keegan and Jessica M. Saxon, both of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Assistant Attorney General Joshua Abraham Edwards, both of Columbia, and Solicitor Kevin Scott Brackett, of York, all for Respondent.

**PER CURIAM:** Michael Faile was sentenced to fifty-four months' imprisonment for shoplifting. He appeals his conviction, arguing the trial court erred in denying

his motion to suppress photographs obtained without a warrant from Flock Safety (Flock), a third-party traffic camera surveillance company. We affirm.

## I.    FACTS

On May 17, 2022, Faile stole two designer handbags from Belk and then fled the scene in a white Chevrolet pickup truck. Monica Dotson, Belk's Asset Protection Manager, observed the incident on surveillance footage. When the shoplifter fled, Dotson saw the truck's license plate number began with "VM," but she could not make out the remaining numbers because Faile had covered them with black tape.

Damien Williams, a research analyst with the Rock Hill Police Department, searched Flock's database and located two photos—each taken a day apart—of Faile's car. One photo showed the vehicle on the southbound exit off I-77 in Rock Hill, South Carolina, around 6:00 p.m. on the day of the incident. A second photo showed the vehicle the following day in Camden, South Carolina, fifty miles away from Belk. The first photo showed Faile's vehicle with black tape covering all but the first two characters—"VM"—of the license plate, but the plate was fully visible in the second photo.

Prior to trial, Faile moved to suppress the Flock photos, arguing law enforcement's warrantless search of the Flock database was an unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution and Article I, Section 10 of the South Carolina Constitution. The trial court denied his motion, finding that an individual does not have a privacy interest in the exterior appearance of a vehicle and the police did not use the Flock photos to track Faile's location.

At trial, Williams testified there were twenty-four Flock cameras located in the City of Rock Hill. He explained the Flock cameras and database aid police in locating stolen vehicles and monitoring vehicles connected with Amber alerts and crime investigations, but it requires human verification of the images. He stated he reviewed the images captured from the exit ramp camera because it was approximately a quarter of a mile from the Belk department store. Williams located a photograph of a truck matching the description of Dotson's vehicle exiting the interstate approximately thirty minutes before the shoplifting incident. He testified he used the first image to locate the second image in Flock matching the vehicle's description, which showed the entire license plate number.[1] Williams

---

[1] Williams used the FBI's National Crime Information Center database (NCIC) to assist in obtaining the second truck photo. First, he looked at the license plate in

provided Darin Swiger, a detective in Rock Hill Police Department's Property Crimes Division, with the truck photos and information he obtained through Flock. Williams testified that the Rock Hill Police Department paid for access to the Flock database, which collects images of vehicles that pass by the Flock cameras and retains the images for thirty days.

Detective Swiger testified SCDMV records revealed the truck Williams identified was registered to Faile. Swiger explained Faile's vehicle registration was linked to a Camden address, which tied Faile to the Flock image of the truck in Camden. He testified that the Flock camera photos confirmed the truck Dotson saw entering the store parking lot was the vehicle associated with Faile's SCDMV registration.

The jury found Faile guilty of shoplifting, and the trial court sentenced him to fifty-four months' imprisonment under the state's enhancement statute for shoplifting third or subsequent offense.[2] This appeal followed.[3]

## II.    STANDARD OF REVIEW

"[A]ppellate review of a motion to suppress based on the Fourth Amendment involves a two-step analysis. This dual inquiry means [appellate courts] review the trial court's factual findings for any evidentiary support, but the ultimate legal conclusion . . . is a question of law subject to de novo review." *State v. Frasier*, 437 S.C. 625, 633–34, 879 S.E.2d 762, 766 (2022).

## III.    LAW/ANALYSIS

---

the image with the obscured tag. He then ran some potential tag numbers through NCIC to see if any matched a white Chevrolet truck with South Carolina tags. Once he identified a list of potential plate numbers, he ran those numbers through Flock and found the second image in Camden, South Carolina.

[2] S.C. Code Ann. § 16-1-57 (2015).

[3] Officer Swiger used Faile's DMV photo in a six-person line up, and Dotson identified Faile from the line-up. Initially, Faile filed a brief and motion to be relieved pursuant to *Anders v. California*, 386 U.S. 738 (1967), arguing the trial court erred in admitting Dotson's out-of-court and in-court identifications because the identification procedure used by Swiger was impermissibly suggestive. This court denied Faile's motion pursuant to *Anders* and directed the parties to brief the Flock issues.

A. United States Constitution

Faile argues the Rock Hill Police Department's warrantless search of the Flock database constitutes an unreasonable search and seizure under the Fourth Amendment of the United States Constitution. Faile argues the information contained in Flock for a duration of thirty days implicates the privacy concerns the United States Supreme Court addressed in *Carpenter v. United States*, 585 U.S. 296 (2018). We disagree.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. For any search, "[t]he ultimate standard set forth in the Fourth Amendment is reasonableness." *State v. Miller*, 423 S.C. 95, 100, 814 S.E.2d 166, 169 (2018) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973)). "The Fourth Amendment prohibits only *unreasonable* searches. The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." *State v. Ross*, 423 S.C. 504, 508, 815 S.E.2d 754, 756 (2018) (quoting *Grady v. North Carolina*, 575 U.S. 306, 310 (2015)). Under *Katz v. United States*, a person must first "exhibit[] an actual (subjective) expectation of privacy and, second, [establish] that the expectation [is] one that society is prepared to recognize as 'reasonable'" to receive Fourth Amendment protection. 389 U.S. 347, 361 (1967) (Harlan, J., concurring).

In *Carpenter v. United States*, the United States Supreme Court held that citizens enjoy a legitimate expectation of privacy in their physical location data compiled and stored by wireless carriers, otherwise known as cell-site location information (CSLI). 585 U.S. at 309–10. The Court found that:

> Mapping a cell phone's location over the course of 127 days provides an all-encompassing record of the holder's whereabouts. As with GPS information, the time-stamped data provides an intimate window into a person's life, revealing not only his particular movements, but through them his "familial, political, professional, religious, and sexual associations." These location records "hold for many Americans the 'privacies of life.'"
>
> . . .

In fact, historical cell-site records present even greater privacy concerns than the GPS monitoring of a vehicle we considered in *Jones*. Unlike the bugged container in *Knotts* or the car in *Jones,* a cell phone—almost a "feature of human anatomy"—tracks nearly exactly the movements of its owner. While individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time.

*Id.* at 311 (citations omitted).

While South Carolina courts have not yet addressed law enforcement's use of Flock, several state and federal courts have found the use of Flock cameras did not violate a defendant's Fourth Amendment rights. *See, e.g.*, *United States v. Brown*, 2025 WL 2444596, at *5 (W.D. Okla. 2025) (finding "that [the d]efendant ha[d] not met his burden to show that his Fourth Amendment rights were violated by the search of the Flock system for the suspect vehicle"); *United States v. Jackson*, 2025 WL 1530574, at *7 (D. Kan. 2025) ("The Flock System at issue here lacks the wide and continuous tracking of a defendant which the Supreme Court has stated is constitutionally suspect. In this case, there were only nine distinct points where the Flock System captured the Chevy Cruz on camera, and these photographs occurred over the course of just one day. The photos did not show the identity of anyone inside the car, nor did the photos provide any insight into any intimate details of their personal lives."); *United States v. Martin*, 753 F.Supp.3d 454, 472–73 (E.D. Va. 2024) (finding Flock camera photos obtained by officers did not violate the defendant's reasonable expectation of privacy because "[t]he Flock system is not meant to 'track' or 'monitor' the entirety of an individual's movements during a particular car trip, much less through the activities of their daily life"); *Commonwealth v. Robinson*, 2024 WL 5454692, at *7 (Va. Cir. Ct. 2024) (finding defendant's reasonable expectation of privacy was not violated because "the current Norfolk FLOCK system is not analogous to long-term GPS positioning, ongoing CSLI geolocation, or constant aerial surveillance, *i.e.,* arrangements by which the government can continuously track an individual's movements . . . and thereby deduce the activities and routine of individuals").

We agree with the trial court's holding that Faile did not have a privacy interest in the exterior appearance of his vehicle or his license plate. The very purpose of a license tag is so that the vehicle and its registered owner may be identified visually by law enforcement. *See United States v. Knotts*, 460 U.S. 276, 281 (1983) ("A person [traveling] in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another."); *New York v.*

*Class*, 475 U.S. 106, 114 (1986) ("The exterior of a car . . . is thrust into the public eye, and thus to examine it does not constitute a 'search.'"); *see also* S.C. Code Ann § 56-3-1240(A) (Supp. 2025) ("[L]icense plates issued for motor vehicles must be attached to the outside rear of the vehicle, open to view.");  S.C. Code Ann. § 16-21-50 (2015) (providing a person is guilty of a misdemeanor for "remov[ing] a license plate from a vehicle . . . with intent to conceal or misrepresent the identity of the vehicle or its owner"); *see also id*. (defining "remove" as "deface, cover and destroy").

Appellant argues the Flock database has the potential for law enforcement abuse and intrusion into the private lives of citizens.  When evaluating Fourth Amendment issues, however, courts are called to evaluate the facts of the particular case, not to assess the potential future concerns that could arise.  *See Dow Chem. Co. v. United States*, 476 U.S. 227, 238 n.5 (1986) ("Fourth Amendment cases must be decided on the facts of each case, not by extravagant generalizations."); *see also Commonwealth v. Church*, 2025 WL 2908089, at *4 (Va. Ct. App. 2025) ("[T]he possibility that someday the Flock system might be improperly used was not the question before the circuit court, nor is it the question before this Court.").  Unlike the "12,898 location points cataloging Carpenter's movements over 127 days," officers only found two photos of Faile's car, timestamped one day apart, within Flock's thirty-day retention period.  *Carpenter*, 585 U.S. at 296.  These two photos did not allow officers to obtain any intimate details related to Faile's movements and the police did not use the Flock photos to track Faile's location.  Based on the facts of this case, we find the detective's Flock search was comparable to searching South Carolina DMV records and did not implicate the privacy concerns addressed in *Carpenter*.

B. South Carolina Constitution

Faile argues that the officer's ability to access Flock without a warrant constitutes an unreasonable search and seizure under the heightened privacy protections of Article I, Section 10 of the South Carolina Constitution.  We disagree.

Article I, Section 10 guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures and unreasonable invasions of privacy shall not be violated."  S.C. Const. Art. 1, § 10.  "South Carolina's express right against unreasonable invasions of privacy . . . provide[s] greater—or, a more 'heightened'—protection than that provided by the United States Constitution."  *State v. German*, 439 S.C. 449, 471, 887 S.E.2d 912, 923 (2023).

Appellant argues that our State's privacy provision is intended to protect citizens from law enforcement's increasingly pervasive use of technology. Faile quotes Chief Justice Kittredge's dissent in *Planned Parenthood South Atlantic v. State* that "[t]he genesis of the privacy provision related solely to modern technology and the ever-increasing volume and acquisition of data and personal information." 438 S.C. 188, 310, 882 S.E.2d 770, 835 (2023) (Kittredge, J., dissenting). In opposition, the State argues that law enforcement's use of Flock was reasonable because it serves society's important interest in preventing crime while still being limited in scope.

Faile was operating his vehicle in plain view on a public road. The Flock camera observed the same information that law enforcement could have obtained from visually noting the license plate number and conducting a routine check of DMV records. Under these facts, we find that law enforcement's Flock search did not constitute an unreasonable search in violation of the South Carolina Constitution.

## IV. CONCLUSION

For the above reasons, Faile's conviction and sentence are

**AFFIRMED.**

**GEATHERS, HEWITT, and CURTIS, JJ., concur.**